Go to our last case of the morning, 20-7013 Huff v. Reeves. Mr. Engle, are you ready to proceed? Oh, I know Mr. Dix and Mr. Poe are sharing their time. As we say, every time that happens, it usually doesn't work out very well. I'm sure it won't work out well this time, but you're welcome to try. So, Mr. Engle. Engle. May it please the court. Your Honor, my name is Derek Engle. I represent Julie Huff, who is the appellant in this case. Summary judgment was granted against Ms. Huff and in favor of Trooper Reeves and Sheriff Ledbetter for this matter. Ms. Huff went to the Bank of Eufaula to check on her safe deposit box. While she was there, Cedric Norris entered the bank, killed the bank president, robbed the tellers, attempted to take another employee hostage. When this other employee refused, he shot her. We are familiar with the facts. Thank you, Your Honor. At the scene, after the vehicle had been disabled, Ms. Huff left the vehicle because she did not want to be in there when Cedric Norris came back in, and she was afraid he would kill her. She ran into the field alone with her hands up, and as she turned alone in the field, Cedric Norris was not around her at this point. As she turned, she was hit simultaneously in her leg and her arm. The only two law enforcement officers present at that time were Trooper Reeves, which was to her left, in front of her to her left, and Officer Torex, which was in front of her to her right. The bullets hit her at the same time and she went on the ground at that point. After she was already on the ground, Cedric Norris sought cover behind Ms. Huff, and according to the deputy, the sheriff's deputy, was using her at more or less as a human shield. While they're at the scene, Trooper Reeves fired a total of 31 rounds of his .357. Officer Torex fired four rounds. Deputy Hall fired two rounds. Ms. Huff... Let me ask you a question, because as Judge Kelly said, we're familiar with the facts, and you've spent a fair amount of time going through facts again, but let's get to some of the degree. There are two distinct... Officer Hall is not involved in this appeal, is that right? That's correct. Sheriff Ledbetter is. Officer Hall is not. So explain why Sheriff Ledbetter is responsible for anything that Agent Hall did incorrectly here. Well, specifically, we believe that Sheriff Ledbetter is responsible for several things, not only for improper training, supervision, but also for, and I skipped over this because I got to the scene, but even the monitoring of the dispatch. There were two distinct frequencies which the officers were monitoring, in particular Trooper Reeves. There was a city dispatch that Officer Torex was on as a city officer, and then a county dispatch frequency that Deputy Hall was monitoring as the county deputy. And Trooper Reeves was going back and forth between these two frequencies. But the Sheriff Ledbetter is liable only if he was aware of problems and did not correct them. Is that a fair statement of what the legal standard is? Well, I think clearly some of the policies don't address anything about hostages, don't address anything about what to do in a situation like this. Why would he think that he needed to have policies with respect to hostages, for example? I think that he was deliberately indifferent. This is a supervisory type liability. Unless the law is clear, and there's clearly established law that all law enforcement departments have to have policies on how to deal with hostages. That's a possibility. I'm not aware of any cases saying that. In the absence of that sort of general rule, it's got to be something that this Sheriff was aware of that required a policy to prevent unconstitutional conduct by his officers. Well, not only hostage, because Deputy Hall denies knowing that Ms. Huff was a hostage, but moreover, in dealing with suspects, and they believed Ms. Huff was a suspect. And the policies are noticeably absent. I don't know if that helps you, but go ahead. I'm just trying to get clear what the legal standard is. And if you disagree with how I've stated the legal standard, please explain where I've gone astray. Well, I think the... I'm sorry, Your Honor. I didn't mean to interrupt you. Were you faced with your question? Yeah. So what I'm saying is unless there's clearly established laws saying you always have to have these policies, doesn't there have to be some notice to Sheriff Ledbetter that in the absence of these policies, he's going to have unconstitutional misconduct by his people? Well, I think it was clear that there was going to be problems with the inadequate policies on this situation. I don't have any specific fact that Sheriff Ledbetter was ever put on any specific notice of deficient policies. I don't have that fact. But you don't think you need that? You think it was obvious? Yes. You think it's obvious that every department needs to have a policy with respect to hostages or actually, in this case, suspects? Alleged suspects, yes, Your Honor. Okay. And as the case law is clear on this, when the egregiousness of the conduct is so egregious, there doesn't have to be a specific case on point. And we believe the conduct here was that egregious. Well, I'm not sure that's true of supervisory liability. If it's so obvious that you shouldn't do something, if it's so obvious that no officer should do it, like shooting someone in cold blood, then that might tell the supervisor, I don't need a policy on that. None of the people we hire would do anything so awful. So what makes it obvious that the less likely that a policy is needed, wouldn't it? Well, in this situation, Deputy Hall, if taken his word to be true, is that Norris was laying on his stomach behind Julie Huff. And he claims that, and by the way, this is after the trooper has already stated in his statement that he believed Norris was dead, that he was completely immobilized. After all that is when Deputy Hall fired his shots at a man laying on his stomach behind another alleged suspect. And he says he aimed at his rib and torso area. How he could do that with such precision around Julie Huff. You're showing that Hall should be liable, but he's not involved in this appeal. What is it that the sheriff should have anticipated? That he needed a policy to say, don't shoot people who are apparently dead. Is that what the policy needed to be? Or don't shoot through people to get to someone who's apparently dead. Or when two people are clearly, in Ms. Huff's case, clearly unarmed, clearly unarmed. Why was the office, why was Ledbetter on notice that such a policy would be necessary? You would hope that it wouldn't be necessary, wouldn't you? You would hope so. You would hope so. No. Okay. I pursued that enough. Go ahead with your argument. Well, again, there were two distinct shooting scenarios. The first one as to Trooper Reeves, one of the bullets had to come from Trooper Reeves. There was only two law enforcement there at the time. Deputy Hall was not yet on the scene. So Trooper Reeves would have shot then an unarmed person alone, even if Trooper Reeves believes she was a suspect attempting to surrender. And that clearly goes against the Fourth Amendment and many other cases. And so the court in granting qualified immunity to Trooper Reeves completely overlooked the first shooting scenario involving Trooper Reeves. The second of the shooting scenario, and we look at the Barrientos case, they need to be segmented. Every shot needs to be analyzed and segmented. Those shots that came at Julie Huff were still, she was now on the ground with the suspect behind her. And he was firing essentially through Ms. Huff to get to the suspect. Trooper Reeves claims that he could not see Julie Huff. That's what he claims. Then if that's the case, he doesn't get the hostage defense, the rescue of the hostage. But moreover, the video evidence from the other troopers, dash cam, clearly shows that they were on level ground right next to each other. It's simply not credible that Trooper Reeves says he could not see Julie Huff when she was literally laying right next to Cedric Norris. Moreover, Dwayne Hall says he saw Julie Huff because she was right in front of Cedric Norris. He had to shoot essentially through her to get to Cedric Norris. Were you able to have experts tell you what pistol, what bullet came out of it? We have one of the 10 wounds that Julie Huff has, one bullet remains in her, and that's in her groin area. It cannot be removed because of its proximity to her femoral artery. We did have that bullet analyzed by one of the world's preeminent ballistics person, Dr. Bennett Omalu, who was able to measure the size of the bullet and determine it to be a . . . What did he determine? I'm sorry? What did he determine? That that bullet came from Trooper Reeves' gun. Okay. Did you have any bullets that came from Torres' gun? There was one bullet removed from Julie Huff, and it was the .40 caliber, and the only one on the scene firing a .40 caliber was Officer Torres. Okay. And how about Vole? Hull, his bullets must have passed through. He was firing a .45 caliber, but again, the facts are, according to his own statement, is that Norris was laying on his tummy, directly behind . . . Yeah, he was shooting her as a bench rest. Exactly, and right behind her, literally raising his arm up over her to fire. Do you have any evidence that Hull's bullet hit her? Well, she was hit 10 times, but those bullets were not still in her. 37 rounds by Reed and Torres, so you don't have any evidence that actually Hull's bullet struck her? We don't have any bullets in Ms. Huff from a .45 caliber. Thank you. But again, using Deputy Hull's own testimony, we don't have any evidence that Hull's bullet hit Ms. Huff without going through Huff. Unless he missed both of them, which wouldn't surprise me with a .45 caliber. Yes, Your Honor, but he claims he hit Norris. Right. He claims that. I can read it to you. You're down to one minute and 56 seconds. I'll reserve the rest of my time. Okay. Thank you. Who do you have going first? Mr. Dixon first, is that correct? Yes, Your Honor. May it please the court, I'm Charles Dixon. I represent Trooper Reeves for purposes of this hearing today. Let me just ask you right off the bat so it doesn't get lost. What's wrong with Mr. Engel's argument that the district court erred because the testimony from Ms. Huff, which seems like valid testimony, is that she fled the car, managed to get away from her assailant, raised her hands in the air, and was struck twice simultaneously. Why doesn't that at least get to a jury? Well, let me first address the simultaneous. There's no evidence in the record that supports Mr. Engel's contention that they were, in fact, simultaneous. Ms. Huff doesn't say that. Her testimony repeatedly is, and when I say simultaneous, the way Mr. Engel and the appellant contend is it's at the exact same moment, meaning from two different people. There is no evidence in the record. What difference does it make? Well, it makes a difference for at least one reason. The reason is if it's not simultaneous. She testified, as Judge Phillips pointed out, she testified she got out, stood there with her hands over her head and got shot. And the judge said, well, I'm going to grant summary judgment. It seems to me to be a clear factual issue. Well, I would represent to you, Your Honor, that there is no factual dispute. So how can you represent that? I'll represent to you this way. We have the testimony. Whether you believe it or not is irrelevant. Well, Your Honor, and let me proceed to explain to you why the judge's determination is completely reasonable. Ms. Huff didn't just testify she got out of the vehicle and then ended up in the field. She testified that Mr. Norris got out of the vehicle and fired two shots and then returned fire started. And then so she wouldn't be killed, according to her testimony, which she believed that she was going to be killed by Mr. Norris. She got out, exited from the driver's side, ran towards the fence line, couldn't get over the fence, ran to the east away from Trooper Reeves' location through the opening in the fence that had been during the TBI maneuver by the vehicle she was driving, and into the field four or five feet, and then turned. The entire time that she's making those maneuvers, and the entire time, and it's Trooper Reeves' testimony, is he never saw her. I know, and that's where the factual issue comes up. And the plaintiff may well have one. Your Honor, you raise the very issue. There's the ability to limit or look at trajectories of bullets, to look at where a location is, and where in relation to her body. Appellant's contention that Trooper, or that Cedric Norris was not anywhere in the vicinity is unsupported by this record. The appellant testified she didn't know where Cedric Norris was. The only information in this record about Cedric Norris' location throughout this entire 43-second incident, where the shooting's occurring, comes from the law enforcement officers who put him beside the vehicle, who put him then running also into the same field. Are you suggesting that the deceased shot this woman? No, Your Honor, I'm not at all. Are you suggesting that Deerhunter, some other area, shot her by mistake? What I'm suggesting is exactly what the court found, which is there's no evidence disproving Trooper Reeves' testimony. You don't have to disprove it on some reason. Yes, there is. I mean, we don't have to believe him. You don't have to believe him, but let me get a fact straight. When did she say she raised her hands over her head? At what point? Actually, she testified that she was running with her hands raised. Okay. But the entire time, if you look at her, there's an exhibit in the record where she locates herself in relation to the vehicle, in relation to where the various law enforcement officers are. By the way, she testified unequivocally that she never saw, at any point, after she exited the vehicle, Trooper Reeves again. So she testified she gets out of the vehicle, she moves to the fence. She raises her hand, and she shot multiple times. The factual... We know. I think it's a very reasonable inference that while her hands were up, she was shot multiple times by Officer Reeves. And what the judge said is, there's no evidence to show that Reeves was wrong when he said he didn't see her. But she was visible. She was there. So why can't a jury believe that he did see her? There's no evidence, Your Honor. I keep coming back to this, that there's no evidence that the plaintiff put forth that she was visible from Trooper Reeves' location. Well, the bullet struck her. So she was certainly visible from his gun. Well, a bullet could have struck her whether or not he was intended to fire at her or whether or not it was a miss and he was firing at Cedric Norse. You keep saying there's no evidence. There's no evidence. But they got out of different sides of the automobile, right? At different times, yes. So they were not clutched together throughout this episode where she was struck as they were trying to hit him, even though her hands were in the air. Well, but Cedric Norse's location is an important factor as to whether or not he's being fired at or whether or not Huff's being fired at. Well, let me ask you, if you take her testimony, which is that she ran away from the other direction, which makes sense, right? She's been assaulted and kidnapped and every other thing. And she has her hands in the air. Do you say at that point, if Norse wasn't right next to her, that it was okay for the police officers to shoot her? Now, let me make sure I question. You're assuming that Norse was not in her vicinity. I'm saying he wasn't right next to her. Yes. That if we assume that fact and we know they got out of different sides of the car. Well, they ran in the same direction. Okay. Well, let's do it this way. Assume that Norse is not standing right next to her or right behind her and that she has her hands in the air and the officer says, you look like a bank robber, Timmy. Bam, bam. Is that okay with you? That he shot someone who was standing there with their hands raised? Yes. And it doesn't matter if she was a bank robber at that point, right? Can't shoot someone with their hands raised unless you think you can. Well, I don't know that I can blanket agree that you can't shoot someone with hands raised. They could have something in their hands. She didn't hear. But if all the facts are, and by the way, the record is, uh, will be before the court and the video that, uh, what, uh, uh, appellant's counsel mentioned wasn't even, it was taken from a completely different angle, from a completely different location and would have shown a completely different perspective. There's no video. There's no evidence presented by the plaintiff of what Trooper Reeves' perspective was. They don't have to be the same just because from one video angle, you can see into the field and it appears to be flat and the people are visible. Doesn't mean from a different angle with different things in between them, like this vehicle that was stopped means anything. The law enforcement officers described his movements and ultimately he ended up right behind her. I think it would be unreasonable to assume that once he started moving that he didn't go right for her. And if he's going right for her, it's completely reasonable that the police officers, including Trooper Reeves, are firing at him. He's an active shooter who has already attempted to inadvertently hit her. It was accidental. Would it be unreasonable for a jury to draw this inference from what happened? Someone had been killed at a bank. There's a very dangerous person in this vehicle. They do not hear anything about there being a hostage. They look and there's another person there and they say, bad person, confederate, bang, bang. And don't really pay much attention to whether hands are up or not. Maybe your hands aren't up as high as they should be. But why wouldn't that be a perfectly reasonable inference from this testimony, from this evidence? And if that's a reasonable inference, wouldn't that inference make your libel? I don't agree that that would be a reasonable inference under the facts of this case. I think the facts of this case, the one that is before the court and that there's a record on, don't include that in the absence of some evidence of where Mr. Norris was, which is only provided by the law enforcement officers, the vehicle and a perspective from Trooper Reeve's point, advantage point, and not from a different direction and a different angle and entirely that it wouldn't be reasonable. It would be unreasonable to think that Reeve saw her. I'm sorry, Your Honor. It would be unreasonable to infer that Reeve saw her, saw the plaintiff? Based on the record before this court that the appellant presented, yes. Really? Okay. Only if you ignore the other evidence. Well, no, I think the evidence supports the contention that he didn't see her. That it was completely reasonable that he didn't see her because she's moving and away from him, one, behind the vehicle and then into a field, through a bar ditch and then into a field. And Trooper Reeve is some distance down the road away from her and she's moving away from him. He's also, as the evidence clearly shows, returning fire as he exits his vehicle, seeking cover, then firing more rounds, ducking down behind his vehicle. Well, see, there's your problem, though, because you're just not giving enough credit to other portions, which is she runs the other way. She gets out of the car the other direction. Now, I agree with you that he probably, if he were thinking, would want to use her as a shield. But she runs away. You say, he's shooting and she sure doesn't report. And I heard the gunshots right next to me. In other words, that Norris is standing next to her, nor does she ever see him in front of her. And the first time that she even is thinking about Norris is after she has been shot and she's on the ground. Then she says, I sensed that he was behind me, which inference, he saw her on the ground, ran over behind her and used her for cover. If a jury were to come back and find that, that that's what happened, I don't think we would reverse for a lack of sufficient evidence. Is that what you're saying we should do? Pardon me, Your Honor? No, if the jury found all of that and just relied on common sense as far as what happened that day and came back with a verdict, then would you appeal and say that verdict can't stand because there's insufficient evidence? A verdict in favor of the appellant or Ms. Huff in this instance? Of course. On those limited facts, I don't know what I would do, Your Honor. Ultimately, the facts that exist now on this record establish that Trooper Reeves' statement that he never saw her is unrebutted. Irrespective, the two things can both happen. Pardon me, Your Honor? Except by the plaintiff who said, I stood there with my hands up and he shot her. But simply being somewhere where you have your hands up doesn't mean... You keep saying that that didn't happen. It did happen. Okay, I'm accepting that she's standing at some point in the field with her hands up. That fact is a different question now. What is different is whether or not Trooper Reeves saw her standing there with her hands up. Well, first, there's no evidence. We're on summary judgment. We're on summary judgment. Word is not gospel. It's one account. Does he then testify, Norris was standing right next to this lady, and my hand was a little shaky and I shot, so I might have hit her accidentally. There's nothing like that in the record. No, there's not. He never saw her. I mean, he didn't see her. That's his testimony. He doesn't put Norris right next to her at the time that she shot, right? Time's up. Well, he's following Norris and tracking Norris and firing at Norris. Norris does end up right next to her. He ends up right next to her at the point that she's behind him, or she's behind her, rather. And what we don't have and what the plaintiff didn't present to the trial court, it hasn't presented here, is any evidence from Trooper Reeves' perspective. And your honors were correct in that it didn't work out. I have not given any time to Mr. Poe. And I'll defer right now so that he can make whatever finishing touch he wants to make. I don't think that's necessary. If you want 20 seconds, Mr. Poe, I guess I'll give you 20 seconds. But I think your position was probably well vetted in the questioning of Mr. Engle. Go ahead. You need to- You're muted. Yeah. Judge Harts, just two things. The manner of Mr. Norris and Ms. Huff being at, when they were laying down, they were in a T-shape. So Mr. Hall had a direct shot at the side based on how they were configured on the ground, had a direct shot. And he did testify that he knew not to shoot at somebody who was not a threat, did not believe her to be a threat. And then, Your Honor, if I can, your standard that you asked Mr. Engle about on a supervisory liability policy or training case is whether the sheriff led better knew of and disregard a substantial risk of harm due to an alleged inadequate policy or inadequate training. And they had policy in this case. There was no notice to the sheriff, no evidence of any notice that the policies were inadequate to protect, especially going along with Mr. Hall's training and testimony when he said he knew he couldn't shoot somebody who was not a threat. Thank you. Mr. Engle, you have a little time left. It's just under two minutes. Do you wish to use any of that time? You're muted still. You're still muted, Mr. Engle. Can't hear you. Okay, here we go. Sorry about that. Okay. Counsel keeps saying that there's no evidence that Trooper Reeves could see Julie Huff. Cedric Norris, who he claims he did see the entire time, was shot three times. Julie Huff was shot, who he claims he couldn't see, was shot 10 times. At least four of those shots came from Trooper Reeves based on the sheer numbers of bullets alone. So the woman that he claims he couldn't see, he shot her at least four times, and the man he says he did see the entire time, he only shot three times. That alone, as well as all the other evidence, he saw Julie Huff the entire time and he shot her. That's all. Thank you, counsel. I also would like to give a shout out to one of the Appalese attorneys, I can't remember which one, for knowing the difference between lie and lay. That distinction has pretty much disappeared, but one of you knows it. I guess Mr. Poe is smiling. Thank you very much, counsel. Case is submitted. Counsel are excused.